May it please the Court, Avram R. Vang, on behalf of the Appellant 1032-1034, Lexington Avenue, LTD. While we have many arguments in our briefs, for the purposes this morning, Your Honor, without abandoning in any way those arguments, I would like to focus on the issue of what constitutes misconduct, as that term is used in Rule 60b-3, and show the Court why what happened in this case was misconduct, and therefore the rulings of the Court below should be reversed. We're dealing here with a Chapter 7 trustee. He serves as a fiduciary to the estate of the debtor. This particular fiduciary was an experienced attorney and an experienced trustee, appointed by the office of the U.S. trustee, and he represents the interests of the unsecured creditors in the estate. Appellant, my client, was the largest unsecured creditor of this estate. I want the Court to know that the settlement which was at issue in the Court below, the funds of that settlement have been held in escrow till today. So that were this Court to agree with our position that the case should be reversed, the parties can be restored to their original position without any prejudice to anybody. Was there any suggestion of collusion between Holdings HGC and the trustee? I'm going to address that, Your Honor, because I think the facts may suggest that, and that's one of the points that I do have, but if I could defer it for just a moment. Now, the salient facts in this case are undisputed. One, it was an adversary proceeding commenced by the U.S. trustee, by the Chapter 7 trustee. Two, no answer was ever interposed in the complaint, to the complaint. Three, the Chapter 7 trustee took no formal discovery. Four, he took some informal discovery and then promptly entered into an agreement to settle the claim for $105,000, and then he made a motion to approve the claim, and ultimately both the Bankruptcy Court and the United States District Court confirmed that settlement. And were these arguments made to the Bankruptcy Court and the District Court in opposition to its approval of the settlement? Yes, Your Honor, they were. They absolutely were on both levels. Right. Now, the — Was there any prevention of your making the position known that it was an unfair amount, it was too low an amount? Did the Bankruptcy Court ever block you from putting out a presentation about that? Well, the answer is no. That was the contention of my client, but our position is that we were impeded in making that presentation and documenting it for the very reason that when we got involved in that aspect of the case and we served a proper discovery notice on the Chapter 7 trustee, admittedly he failed to produce critical and crucial documents to my client. And so we were absolutely impeded in establishing that the settlement was not a fair and reasonable settlement. And in fact, Judge Grossman specifically stated on the record that in his mind the settlement met the lowest standard for approval, the lowest standard for approval. And that was because he didn't have the salient facts before him. Now — But just so I'm clear, and I may not have heard you fully, in response to Judge Droney's question, yes, the argument — you were able to articulate an argument to the bankruptcy judge that the settlement wasn't fair, but you told the judge we need more information in order to fill that. We didn't have the sufficient information to document our claim that the settlement was not fair. So you didn't make it? Or so you made it but said we don't have sufficient evidence? We made it, but we were impeded in making it. All right. Okay. That is the point. Thank you. Now, the Chapter 7 trustee admitted on the record in the courts below, both before the bankruptcy court and before Judge Kaplan, that he did not handle the response to our demand for document production himself, number one. Number two, he had physical possession of these critical documents at the time the demand was served upon him. And number three, had he handled the response himself, those three documents would have been produced, would have been produced by him. So he completely acknowledged the fact that those documents were essential documents. We were entitled to them. We didn't have them. And his statement to the court below was, my counsel, quotes, simply didn't produce, end quote, those documents. That's all he could say about it. My counsel simply did not produce those documents. Now, I'd like to point out to the court that our courts recognize that a standard of conduct, a standard of care can vary depending upon the person involved. And I will illustrate with a medical malpractice case. In a medical malpractice case against a general practitioner, he might be found to observe, to have observed a proper standard of care for what he did. A specialist might be found for the exact same care to have perpetrated malpractice because he's held to a much higher standard based upon his knowledge and his skill. And that makes a lot of sense. It makes a lot of sense because when an individual goes to a GP, you don't expect the same standard of care as you do from a specialist. We'll agree with you that it makes sense. Would you continue the analogy so I can follow you? In the case of this Chapter VII trustee, who was an experienced attorney, who is an experienced attorney. In the case of this Chapter VII trustee, when my clients got their response back without these three critical documents, they had no reason to suspect that there were any documents omitted, because given the — during the stature of this man, and we didn't know that he wasn't personally involved in the response, they expected that they had everything they should have received, and they didn't. They made an offer, right? I'm sorry, Your Honor. I didn't hear your question. They made an offer themselves. Lexington made an offer. No, sir. Okay. Can I just —  It brings me to really a very important point in the case. Can I ask a follow-up question? How much was the offer? Our — the settlement was $105,000. My client offered $130,000. And what my client would have bought for that $130,000 was the very cause of action which was being settled. My client at that point in time believed it had a lot more value, and so my client was willing to pay $130,000 to the estate to buy the cause of action to prosecute it against the defendants. And that actually leads me, Your Honor, to respond now to your question, which is do I think there may have been some form of collusion? And I think the facts of this case suggest that for a number of reasons. Number one, as an experienced attorney and trustee, I would — as I would have expected the Chapter 7 trustee to demand an answer and to take formal discovery, which he did not do. He quickly jumped at a $105,000 offer when he knew at a minimum there was a $150,000 licensing fee paid, there were other licensing fees which he never looked into, and there were monthly royalty payments made. Number two, why didn't he take the $130,000 offer? It was $25,000 more for the estate. He would be out of the case. My client would prosecute the case against the defendants. I think the Chapter 7 trustee was fearful that my client would prevail in pursuing the action, and then he would be personally and professionally embarrassed. So he had no choice at that point in time but to say no to the better economic offer for the creditors of the estate, Judge. And that's why I do think there's an inference of possible collusion here. What if any delay was there between sort of the discussion of the $105,000 and the $130,000 offer? Well, when they went before Judge Grossman in the bankruptcy court for the original hearing, Judge Grossman said, why don't you people talk? And so after the $105,000 settlement was presented to the bankruptcy court, the $130,000 settlement, as I understand it, I was not part of it, but as I understand it, was probably 4 to 8 weeks at max for that time. It was certainly before they came back to the bankruptcy court for further proceedings on the offer of settlement. On the offer of settlement that was approved. 105, correct. Now, the one thing that I do want to emphasize here is that when we were in the court below, the court below shifted the burden in his rulings, and you see it on the transcript. He said, why couldn't your client have taken depositions? Your client didn't do any discovery. He said to me, when your client got the response from the Chapter 7 trustee, he made no motion to the court below to compel production of additional documents. My response to that is the court below shifted the burden of responsibility from the Chapter 7 trustee to my client. My client had no reason at the time to believe he hadn't gotten all of the pertinent documents. And as far as discovery goes, it was the Chapter 7 trustee who commenced the case. He was responsible. He represents, he is the fiduciary for the estate. It was his burden to take depositions. He dropped the ball, not my client. Now — Because the trustee was there essentially protecting your client's interests. Exactly correct. He's appointed by the office of the U.S. trustee to serve as the trustee in a Chapter 7 case. It's his job to marshal all of the assets and to make the decisions. Just to remind me, were there other unsecureds that were also being represented by virtue of —  My client, though, was the major creditor. Now, we're approaching this from two different directions with respect to the relief that we're asking from this Court. I don't believe this Court has ever ruled as to — I'm going to point out your red light is on. Okay. I'll be very brief. Yeah, please. We would like to hear this, but just — Thank you, Your Honor. Either this Court should rule that where a Chapter 7 experienced trustee fails to produce documents, that in itself is misconduct universally. I don't believe this Court has ever ruled on that. And that the party who sustains that misconduct, the effects of that misconduct, does not have to make any further showing, like how I was impaired, even though I've shown you that we were impaired. Alternatively, the Court need not go that far. Alternatively, the Court can simply rule that in the circumstances of this particular case, we established misconduct, and therefore, the reversal should take place. I realize the red light is on. Thank you, Your Honor. And you've reserved two minutes for rebuttal, Mr. — Yes. Ms. Jacobson. Thank you, Your Honors. I want to start with the what is — I don't know whether the podium may be down. There's a button to your right. Oh, I see. Thank you. It might make it easier for you to read. Thank you, Your Honor. You're welcome. I want to address, to begin with, what this appeal is about. They did not — the district court found, and they admitted at the hearing on the 9024 motion, that the 9019 motion was not what they were challenging, and that they waived it. So the arguments today about reasonableness and the settlement were waived by appellant below and should not be heard by this panel now. On the issue of the misconduct, there is simply no evidence. And I want to — I think what's critical is to focus on the three documents that appellant keeps talking about. Not one of those three documents showed any payments to the defendants in the adversary proceeding. They had nothing to do with holdings. They had nothing to do with FCG. What they had to do with was a license agreement with management, a different entity for whom there was already a settlement, with which appellants had objected to the settlement, that a settlement was approved over their objection, and they never appealed that. That was what the documents showed. They showed payments to management, not to the defendants in the adversary proceeding. The settlement was perfectly reasonable. Trustee had eight causes of action in the adversary proceeding. At the 9019 hearing, he stated that there was no value to the eighth cause of action, which was the only one that they're appealing, because he had no evidence that holdings had, in fact, received any payments. To this day, there is still no evidence that holdings received any payments. The value was in the first five causes of action, which was seeking to set aside preference transfers to holdings and HCG. Those transfers totaled approximately $235,000, and for that, the trustee settled at $105,000. There was nothing there that was withheld. There was no misconduct by the trustee. I will point out that the factual findings of the court below, which are subject to a clearly erroneous standard, was that the trustee did not engage in fraud or misconduct. This being bankruptcy, a better reminder, when you say the court below, we're talking about the bankruptcy court. Well, originally, the bankruptcy court found that there was no evidence. Don't we hear from the bankruptcy court afresh rather than looking at it through the district court's eyes? But it's still clearly erroneous for factual findings. Legal findings, yes. Of which court? Of the bankruptcy court or the district. I mean, quite frankly, either one here. The district court agreed with the bankruptcy court that it was that there was no clearly erroneous finding by the bankruptcy court on conduct by the trustee, and went so far as to himself, I believe, find that there was no misconduct by the trustee. And based on the record that was created in the district court. Based on the record that was created in the district court. Sorry, in the bankruptcy court, I mean. Based on the record in the bankruptcy court. And also based on the argument on the 9024 motion in the district court. Because you must remember, on top of the fact that these documents did not relate to the cause of action at issue, because they didn't show any monies to the actual defendants in the adversary proceeding. In addition, what Appellant keeps avoiding mentioning is that they had information about payments to management, the defendant not in the adversary proceeding, but in the prior proceeding that had been settled, showing that, in fact, they knew in 2012, two years before the motion on the 1919, that management was a party to license agreements, and clearly had received funds. They did not. Which were then raked back in to the tune of 105, right? No. That had nothing to do with holdings. This was management. Oh, okay. This was payout management, not a party to this proceeding. What the trustee's eighth cause of action was, was that holdings, as a 50 percent owner of management, must have been unjustly enriched. Basically a veil-piercing theory. The courts below have both found there was no evidence for veil-piercing that was submitted, and that the only evidence was that management received funds. But that is not what's at issue here. The issue is whether holdings was unjustly enriched, not whether management. Management was settled out earlier than holdings, and was never appealed. And it is clear that Appellant had the information. At the 1919 hearing, in November . . . in October of . . . I'm sorry. No, in November of 2014, they raised the license agreements that management was a party to. But that was not holdings. At the 1924 hearing, in front of the district court judge, they admitted that they knew about payments earlier than the payments that were at issue. The documents showed payments in 2007. They admitted that they knew about payments that management had received in 2008 and 2009, and yet they had not raised those payments to the bankruptcy court at the time of the settlement. They had not taken any discovery. And the courts below . . . I want to raise this issue that the courts below somehow shifted the burden. The courts below did not shift the burden. There was no burden on the trustee. There was not necessarily a burden on the Appellant, either. What the courts below found, though, was that the Appellant couldn't come forward with a 60b-2 or 60b-3 claim when the Appellant had information and chose to forego any right to take discovery. The trustee had an exchange of information before settling, was satisfied that he had not received any money, and made its settlement. Can you address the $130,000 offer? Yes, Your Honor. The $130,000 offer was not strictly we'll pay $130,000 instead of the $105,000. The $130,000 offer was that we'll then prosecute on your behalf this claim against Holdings, which the trustee did not want to do. More importantly, and one of the reasons that the bankruptcy court denied this, was when the bankruptcy court found that the bankruptcy court said that one of his concerns was the trustee's settlement had Holdings, which had a $720,000 claim against the debtors' estate, which there was a dispute as to whether that claim was secured or unsecured. Certainly, if it was secured, it would have had priority. But there was apparently a dispute. Everyone called it apparently secured. So it's unclear, because it was never developed, because Holdings was willing to waive that claim, which it claimed was secured, $720,000 claim, waiving it as part of the settlement. It was not going to be waived if the appellant bought the claim from the trustee. And then it would have had to be fought as to whether or not that $720,000 claim was part of the estate. And the judge was concerned, the bankruptcy court judge, was concerned because they were — basically, the appellant's idea was that they were going to treat Holdings differently as a creditor and not guarantee them the same pro rata proportion of a payout as they would guarantee all the other creditors. And the court said, how do you bifurcate the unsecured creditors and pay one group one and another group something else? And that was a major concern. And the response of appellant's counsel at the time was, I would have to speak with my client. So he came to the 9019 hearing not even prepared to treat a creditor the same as all the other creditors. This was a major reason that the court found that the settlement offer was not acceptable. We also would argue that that has been waived, that the appellant admitted at the 9024 hearing before the bankruptcy court that they had waived their 9019 motion objections, and that, therefore, that is not actually properly on appeal to this Court. Once waived below, they can't resurrect it now at the Second Circuit. They waived it. They admitted they waived it to the district court. I think that they also are making this argument really for the first time on appeal, that a different standard applies because the fiduciary is involved. And I think it's, first of all, they argued below merely that there was no law as to whether or not under Rule 60b-3 they had to show that the conduct prevented the moving party from fully and fairly presenting its case. But obviously, the law in this circuit is quite clear. There is no decision in this circuit that supports the appellant's argument that it's not the correct standard. They haven't cited any legal precedent in any Federal court to support a heightened standard for fiduciary, because there is none. In fact, to the contrary, at least two other circuit courts in cases involved alleged trustee fraud, not even misconduct but fraud, have applied the same standard as they apply in other 60b-3 cases. And I would be happy to provide those cases, because they really didn't make that argument clear until their reply brief. So we didn't address it in our original briefs. Why don't you send us a 28J letter? Okay. Just giving us the names of the cases, no argument. Absolutely, Your Honor. We will do that. Thank you. And this Court has held that even in cases of fraud, and that's the Phillips case that is cited, and fraud on the court, which is the State Street case, which is also cited in our briefs, the same 60b-3 standard applies of having a fully and fairly, having to have interfered with the ability to fully and fairly present your case. So fraud, fraud on the court, in all these circumstances, the Second Circuit has held, you still have to show your ability to fully and fairly present your case was interfered with. And there is no basis to find that a different standard applies. And as I mentioned, that was waived by the appellant below. I note that in their reply brief, they cite to a section of their brief to the bankruptcy court judge to claim that it wasn't waived. But that section of the brief specifically says the general rule doesn't require this, not that there should be a special rule for the fiduciary. And therefore, again, we argue that that claim was waived. Under the appellant standard, proposed standard, any misconduct by a fiduciary, even if it's unrelated to the order at issue, and we would argue that's exactly the situation here, it's unrelated to the order at issue, would require relief from the order. That interpretation has no basis in the law and requires the court to ignore the public policy which favors finality and judgments. And under the full, under the interference fully and fairly present your case standard, appellant can't meet that. They cannot show that because the three documents at issue A only showed payments to management, a distinct corporate entity from Holdings, which was the party to the adversary proceeding. And it doesn't, and moreover, they had similar information about payments to management two years earlier. They admitted that to the district court. They further admitted to the district court that had they exercised due diligence, they would have had these documents earlier. Those admissions are fatal to their case. And I note that at the 1919 hearing, they actually referenced license agreements that management had. So they cannot claim that there was anything that the trustee hid from them that somehow prevented them from fully and fairly presenting their case. There was no payments to Holdings. And I'll note, as the district court held in a prior case, the Catskill case, also cited in our briefs, there is no interference if the evidence is cumulative, insignificant, or of marginal relevance. That's exactly what's here. Just because the trustee agreed that the documents should have been produced does not mean that they were relevant to the motion. There's certainly a different standard for what should be produced in response to a request than what is actually relevant to the motion. And the appellant has been conflating those two arguments. I would just like to say, because they spent so much time on it, and I know my time is up, and if I could just have, that in their papers, they spent a lot of time on the trustee's statement of the 1919 hearing that his, quote, his information is that those payments were not made. And I want to just point out the question he was answering at the time. And the question was given in response to a question concerning the value of the eighth cause of action. And the eighth cause of action alleged that holdings had been unjustly enriched. So an answer that there were no payments was clearly a reference to holdings, and that's how the bankruptcy court interpreted the answer. But even if you could interpret it as to mean management, there would have been no reliance by the appellant, because they knew management had received payments and they'd known it since 2012 when management gave them that information. So there couldn't have been anything about the trustee's statement. The courts below found it wasn't misleading. They found it was an accurate statement, first of all. But it couldn't have been misleading under any circumstance. And just very briefly on 60b-2, more or less for the same reasons as the 60b-3, this was not new evidence. They knew about management. It didn't relate to holdings. And their admission at the district court that with due diligence they could have done it themselves is evidence that they cannot meet the 60b-2 standard. Thank you. Thank you. Mr. Vann, you've reserved two minutes for rebuttal. Just give me a second. First, the claim of any waiver of the misconduct cause of action. If you turn, if you look at the appellant's appendix at pages 8 to A271 at SEC, Judge Kaplan dealt with that claim at length. It was never waived. He dealt with it and he ruled on it. So that claim is well preserved for argument before this Court. There's no dispute as to all the things I mentioned about the Chapter 7 trustee and what he didn't do. He never took depositions. He never pursued discovery. He quickly ran into a settlement and tried to get it through. That's undisputed. There was a wire transfer made. The monies went into the debtor's account. And, in fact, it was and we dealt with that at length in our brief. I'm not going to repeat the arguments, but you can't just do a wire to somebody's account without knowing the wire transfer instructions. Clearly the licensee initially wired those monies into the debtor's account and only later was it transferred out. It's inexcusable. It just doesn't tie in. And with respect to the purchase of the cause of action, if my client purchased the cause of action, it wasn't that he was going to pursue it on behalf of the trustee. He was going to buy and own the cause of action. The trustee and the estate were out of the case. They were selling a cause of action for $130,000. If my client got Zippo or $500,000, it would have belonged to my client. That's what he was buying. And that's what is so important about this. Unfortunately, we keep hearing presentations that don't accord with the facts. But was there a waiver of some claims by the other party? In the settlement, there was, Your Honor. But, again, if they participated in the distribution of the $130,000, that would only have hurt my client. My client was prepared to take that risk because we were the largest creditor. The other creditors' amounts were rather nominal. So, yes, the other unsecured creditors would have had to give a portion of the money up because of that settlement. But there would be $130,000 being distributed, not $105,000. They would still have come out ahead. So another $25,000. Exactly, Your Honor. All right. Thank you very much. Thank you both. We'll reserve decision.